UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HAROLD CHAPMAN, JR. a/k/a HAROLD ASKINS, | CIVIL ACTION–LAW |
| Plaintiff | |
| V. | JURY TRIAL DEMANDED |
| MARLIN FREEMAN, ELAINE COFFMAN, ERIKA FOOSE, WILLIAM TED WILLIAMS, | No. 3:12-CV-2323 Judge Munley |
| Defendants. | Magistrate Judge Carlson |

## AMENDED COMPLAINT

Plaintiff David Harold Chapman, Jr. a/k/a/ Harold Askins ("Mr. Askins"), by and through his counsel, Barry H. Dyller, Esq. of the Dyller Law Firm, hereby complains against defendants as follows.

## INTRODUCTION

Between 2010 and April 2012, defendant Marlin Freeman repeatedly orally raped Mr. Askins.

During part of that time period of the oral rapes, defendants Elaine Coffman, Erika Foose and William Ted Williams knew about the rapes and their repeated, regular occurrence. Coffman, Foose and Williams chose not to intervene to prevent future rapes. Instead, Coffman, Foose and

Williams chose to let the rapes continue, not to tell anyone or otherwise intervene, and instead directed Mr. Askins to remain silent about the repeated rapes he was forced to endure.

While Mr. Askins was and is a prisoner, no judge sentenced him to be orally raped while in prison. That punishment was cruel and unusual, was without due process, and was purely Freeman's whim.

Coffman's, Foose's and Williams's decision not to intervene constituted deliberate indifference and was unconstitutional, and was the product of their lax and accepting attitude toward sexual violence toward prisoners. Coffman's, Foose's and William's decision not to intervene also fell below the standard of care for nurses, and thus constituted professional negligence.

## JURISDICTION AND VENUE

1. This action arises out of violations of 42 U.S.C. § 1983.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the defendants reside in this state and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

4. Mr. Askins is an adult individual currently residing in the State Correctional Institution at Huntingdon, in Huntingdon, Pennsylvania.

5. Defendant Marlin Freeman ("Freeman") is a correctional officer employed by the Commonwealth of Pennsylvania, Department of Corrections.

6. Upon information and belief, defendant Elaine Coffman ("Coffman") is a registered nurse employed by the Commonwealth of Pennsylvania, Department of Corrections.

7. Upon information and belief, defendant Erika Foose ("Foose") is a registered nurse employed by the Commonwealth of Pennsylvania, Department of Corrections.

8. Upon information and belief, defendant William Ted Williams is a Health Care Administrator employed by the Commonwealth of Pennsylvania, Department of Corrections.

9. Upon information and belief, defendants are residents of the Commonwealth of Pennsylvania.

## BACKGROUND

10. Prior to 2010 and until April 2012, Mr. Askins was housed at the State Correctional Institution at Rockview.

11. Mr. Askins worked a prison job, for which he was paid.

12. Mr. Askins did not have outside financial support. Therefore, his employment within the prison was extremely important to him.

13. In general, correctional officers have extreme power over inmates. That power includes the power to charge them with infractions of prison rules. If a prisoner is found to have violated a prison rule, his status can be decreased, resulting in loss of prison employment, loss of privileges, and other negative consequences for his time in prison.

14. When correctional officers charge a prisoner with violating a rule, even if the charge is without basis or purely fabricated, the majority of the time the inmate is found guilty of the offense and is punished. This is one way in which inmates can be coerced by correctional officers.

The Rapes

15. Freeman's post at SCI-Rockview was at the chapel.

16. Freeman's strategy to force Mr. Askins to perform oral sex on him was to make Mr. Askins sign out religious tapes which were offered to inmates in general population. Freeman would then call for Mr. Askins to return the tapes to the chapel. This resulted in passes being given to Mr. Askins to return the tapes to the chapel.

17. In a room in the chapel, Freeman would force Mr. Askins to perform oral sex on him. This went on repeatedly for about two years.

18. The oral sex was non-consensual.

19. Sex between an inmate and a staff member can never be consensual because of the disparity of power between inmates and staff members.

20. At the conclusion of each incident of oral sex, Freeman made Mr. Askins spit out Freeman's semen. Freeman then checked Mr. Askins' mouth to see if there was any semen remaining.

21. Mr. Askins was terrified to tell anyone, because Freeman could simply deny it. Mr. Askins knew that correctional officers are virtually always believed in matters of credibility between themselves and inmates.

Mr. Askins also knew that his employment, housing and other matters were at risk if he told what was happening to him.

22.  Freeman also directly threatened Mr. Askins, by telling him that if he ever told anyone Mr. Askins's "life in the state system in Pennsylvania prisons would be pure hell," that he would lose his job, that Freeman would make misconduct reports, and similar threats.

Mr. Askins Asks For Help

23.  On March 21, 2011, Mr. Askins gathered up his courage and asked for help.

24.  Specifically, Mr. Askins sent an "Inmate's Request to Staff Member" (Form DC-135A) to Foose, with copies to Coffman and Williams.

25.  The text of the Inmate's Request to Staff Member was:

> Mrs. Foose
>
> I am having a problem with an officer 'Freeman' who has been sexually harassing me for a period of a year and a half now.  Can you help me.  This officer has been forcing me to perform oral sex on him.  So, the next time he makes me do that, would you please 'swab' my mouth.  Thank you.  I'll speak to you about it when I come to work.
>
> Cc:   Mr. Williams, CHCA
>       Mrs. Coffman, RN

6

26. Mr. Askins also sent an Inmate's Request to Staff Member to Ms. Coffman, the text of which read:

> Mrs. Coffman,
>
> I have been having a officer 'Freeman' sexually harassing me for a period of 1 ½ years now. He has been forcing me to perform oral sex on him. The next time it happens, would you please 'swab' my mouth.
>
> Also, I'll talk to you about it when I come to work.
>
> Cc:   Mr. Williams, CHCA
>          Mrs. Foose, RN

27. Mr. Askins worked in the medical department as a "medical janitor." Mr. Askins therefore thought that the Department of Corrections employees who worked in the medical department were the best people to help him. Mr. Askins also thought they could swab his mouth, obtain semen or DNA that remained, and prove that Mr. Askins was being truthful and that Freeman was orally raping him.

28. Mr. Askins was also seeking medical help, in that swabbing rape victims is standard medical procedure. Mr. Askins could also, like all other

rape victims, be tested for HIV, syphilis, and other sexually transmitted diseases.

29.  Instead of helping him, Coffman and Foose told Mr. Askins to never repeat what he told them to anyone else if he wanted to stay out of trouble.

30.  Neither Coffman, Foose or Williams ever responded in writing to Mr. Askins's written Request to Staff Member.

31.  Instead, Coffman, Foose and Williams consciously and deliberately chose to ignore the serious sexual assaults that were regularly being inflicted on an inmate.  Coffman, Foose and Williams chose not to intervene to prevent future rapes.

32.  By choosing not to intervene to prevent future rapes of Mr. Askins, Coffman, Foose and Williams permitted Freeman to continue to regularly rape Mr. Askins for another thirteen months, until April 2012.

The April 11, 2012 Rape

33.  On April 11, 2012, Freeman again orally raped Mr. Askins.

34.  However, at the conclusion of that rape, Freeman was interrupted.  Another correctional officer happened to walk down the hall toward where Freeman had just concluded raping Mr. Askins.

8

35. This unexpected interruption distracted Freeman. Mr. Askins was able to spit out Freeman's semen into a piece of cloth and put the cloth in his pocket.

36. Mr. Askins mailed samples of the semen to the Pennsylvania State Police, to the district attorney, and to a private lawyer. The lawyer subsequently turned over the sample to the Pennsylvania State Police. Upon information and belief, there has not yet been a result of any DNA analysis to prove that it was Freeman's semen. It was in fact Freeman's semen and DNA.

37. Because he had been able to obtain and mail out of the prison the semen/DNA samples, Mr. Askins had the courage to make a formal complaint and/or grievance.

38. Mr. Askins's grievances have never been responded to by prison officials or anyone else.

39. Soon after Mr. Askins made his grievance, he was transferred out of SCI-Rockview to its sister prison, SCI-Huntingdon. The transfer occurred while Mr. Askins was being interviewed by the Pennsylvania State Police. Correctional officers at SCI-Rockview packed Mr. Askins's belongings while

Mr. Askins was not in his cell. One of the items taken and not returned to Mr. Askins was an additional semen sample from Freeman.

Damages

40. Mr. Askins suffered substantial damage by virtue of defendant Freeman's repeated rapes, and by defendants Coffman's, Foose's and Williams's conscious and deliberate decision to let Freeman continue to rape Mr. Askins.

COUNT ONE
(42 U.S.C. §1983)

41. Plaintiff incorporates herein paragraphs 1 through 40 by reference with the same force and effect as if they were set forth at length.

42. Defendant Freeman's conduct as set forth above constituted intentional punishment, and was objectively unreasonable. Such conduct constituted cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution. In addition, such conduct constituted a deprivation of Mr. Askins's due process rights under the Fourteenth Amendment to the United States Constitution.

43. Defendant Freeman's conduct was therefore a deprivation, under color of state law, of rights guaranteed to Mr. Askins under the Eighth and Fourteenth Amendments to the United States Constitution.

44. As a result of defendant Freeman's violations of Mr. Askin's constitutional rights, Mr. Askins suffered injuries and/or damages.

## COUNT TWO
### (42 U.S.C. § 1983)

45. Plaintiff incorporates herein paragraphs 1 through 44 by reference with the same force and effect as if they were set forth at length.

46. Defendants Coffman, Foose and Williams had actual knowledge that Mr. Askins was being repeatedly raped and would continue to be repeatedly raped.

47. Defendants Coffman, Foose and Williams chose not to intervene to prevent future rapes of Mr. Askins.

48. Defendants Coffman, Foose and Williams were deliberately indifferent to the risk that Mr. Askins would suffer future rapes.

49. As a result of defendants Coffman's, Foose's and Williams's failure to intervene, deliberate indifference and choice not to provide

medical care, Mr. Askins suffered an additional thirteen months of regular rapes.

50.  Defendants Coffman's, Foose's and Williams's conduct was therefore a deprivation, under color of state law, of rights guaranteed to Mr. Askins under the Eighth and Fourteenth Amendments to the United States Constitution.

51.  As a result of defendants Coffman's, Foose's and Williams's violations of Mr. Askins's constitutional rights, Mr. Askins suffered injuries and/or damages.

## COUNT THREE
### (Negligence/Gross Negligence)

52.  Plaintiff incorporates herein paragraphs 1 through 51 by reference with the same force and effect as if they were set forth at length.

53.  Defendants Coffman, Foose and Williams owed a duty to Mr. Askins.  That duty included a duty to report his claim of sexual assault to supervisory officials and to law enforcement officials; to examine him for evidence of sexual assault; to examine him for medical conditions relating to his report of sexual assault; to make sure Mr. Askins's psychological needs as the victim of sexual assaults were attended to.

54. Defendants Coffman, Foose and Williams also had a duty to keep Mr. Askins from being re-victimized by the perpetrator, in this case by Freeman.

55. Defendant Williams, as the supervisor of Coffman and Foose, also had a duty to supervise Coffman and Foose and to assure that they performed their duties as outlined above in a professional fashion and within the standard of care.

56. Defendants Coffman, Foose and Williams grossly breached these duties.

57. Defendants are each responsible for their own breaches of duty.

58. Defendant Williams is also responsible for the breaches of duty by Coffman and Foose.

59. As a result of their breaches of duty, defendants Coffman, Foose and Williams caused Mr. Askins to suffer substantial injuries and damages, including an additional thirteen months of oral rapes.

60. The actions and inactions of defendants Coffman, Foose and Williams were extremely reckless and/or intentional.

WHEREFORE, Plaintiff demands judgment as follows:

A. For Count One, an amount to be determined at trial, including punitive damages and interest;

B. For Count Two, an amount to be determined at trial, including punitive damages and interest;

C. For Count Three, an amount to be determined at trial, including punitive damages and interest;

D. For Plaintiff's attorneys' fees pursuant to 42 U.S.C. §1988;

E. For costs and disbursements incurred in this action; and

F. Any such other relief as the Court may deem just and proper.

Respectfully submitted,

DYLLER LAW FIRM

/s/ Barry H. Dyller, Esq.
Attorney for Plaintiff
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.